UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| H. CAMERON MACMANUS, ) ) *Plaintiff,* ) ) v. ) ) CHATTANOOGA-HAMILTON COUNTY ) HOSPITAL AUTHORITY d/b/a Erlanger ) Hospital and BLEDSOE COUNTY, ) TENNESSEE, ) ) *Defendants.* ) | Case No. 1:08-cv-96 Judge Mattice |

## MEMORANDUM AND ORDER

Plaintiff H. Cameron MacManus initially filed this action in the Chancery Court of Bledsoe County, Tennessee against Defendants Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Hospital and Bledsoe County, Tennessee alleging breach of contract, procurement of a breach of contract in violation of Tenn. Code § 46-50-109, tortious interference with Plaintiff's contractual relationships, and interference with Plaintiff's prospective business advantages. (Court Doc. 1-2.) Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441. (Court Doc. 1-1.)

Before the Court is Plaintiff's Motion to Remand [Court Doc. 20]. For the reasons explained below, Plaintiff's Motion to Remand will be **GRANTED**.

**I.    FACTS AND PROCEDURAL HISTORY**

The facts, as recited below, are not in dispute.

Plaintiff is an osteopathic physician licensed to practice medicine in Tennessee. (Court Doc. 1-2 ("Complaint"), ¶ 1.) Defendant Bledsoe County is a governmental subdivision of the State of Tennessee which owns Bledsoe County Hospital, d/b/a Erlanger

Bledsoe Hospital ("Erlanger-Bledsoe"), which is a 25-bed acute care hospital located in Pikeville, Tennessee. (*Id.* ¶ 3.) Defendant Chattanooga-Hamilton County Hospital Authority, d/b/a Erlanger Health System ("Erlanger"), is a governmental hospital authority located in Chattanooga, Tennessee. (*Id.* ¶ 2; Court Doc. 4 ("Answer"), ¶ 2.) Erlanger is the lessee and operator of Erlanger-Bledsoe. (Answer ¶ 3.)

Plaintiff is board-certified in family medicine and has had medical staff privileges at Erlanger-Bledsoe since 1994. (*Id.* ¶ 5.) On March 5, 2008, Plaintiff received a letter from Dr. James W. Kennedy, notifying him that his medical staff privileges at Erlanger, including his privileges to admit patients to Erlanger-Bledsoe, had been suspended. (*Id.* ¶ 6.) The stated basis for this suspension was an audit of a number of Plaintiff's patients' charts. (*Id.*; Complaint ¶ 6.) Dr. Kennedy's letter relied upon certain provisions of the Erlanger Staff Bylaws. (Complaint ¶ 7; Answer ¶ 7.)

On March 28, 2008, Plaintiff filed a complaint in the Chancery Court of Bledsoe County claiming that the suspension of his medical privileges constituted a breach of contract, procurement of breach of contract in violation of Tenn. Code § 46-50-109, tortious interference with his contractual relationships, and interference with his prospective business advantages. (Complaint ¶¶ 11-14.) Plaintiff requested injunctive relief to restore his privileges, an award of damages, and attorney's fees. (*Id.* at 4-5.)

Defendants removed the case to this Court on April 24, 2008. (Court Doc. 1.) Plaintiff then filed a Motion for Preliminary Injunction and Issuance of Show Cause Order and the Court set a hearing on Plaintiff's motion for May 12, 2008. (Court Docs. 3,5.) At the hearing on Plaintiff's preliminary injunction motion, the Court *sua sponte* raised the

issue of whether it has subject matter jurisdiction over this case. After hearing brief argument from both parties, the Court recessed the hearing to afford the parties an opportunity to file briefs on that issue. Plaintiff filed a Motion to Remand and a supporting memorandum on May 13, 2008 [Court Docs. 20, 21] and Erlanger responded on May 15, 2008 [Court Doc. 22]. Defendant Bledsoe County represented to the Court at the hearing that it has no position on whether this Court has subject matter jurisdiction over this action and will defend in either forum.

**II.    ANALYSIS**

Federal courts are courts of limited jurisdiction. *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003). Accordingly, "it is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hudson*, 347 F.3d at 141.

Pursuant to 28 U.S.C. § 1441(a), a civil action brought in state court may be removed to federal court if the federal court has original jurisdiction over the matter. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Defendants removed this case because they contend that it "require[s] the resolution of a substantial question of federal law (i.e., whether a proper 'professional review action' was conducted by Defendant pursuant to the [Health Care Quality Improvement Act of 1986 ('HCQIA')])." (Court Doc. 1 at 2.) Defendant[1] argues that "[a]lthough not expressly

---

[1] As noted above, Defendant Bledsoe County has not taken a position on the issue of jurisdiction so the Court's reference to "Defendant" is intended to include only Defendant Erlanger.

pled in Plaintiff's complaint, a federal question is nonetheless both intrinsic and central to Plaintiff's causes of action." (*Id.* at 4.)

### A. Well-Pleaded Complaint Rule

"To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses[.]" *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). Even "a defense that relies on the preclusive effect of a prior federal judgment or the pre-emptive effect of a federal statute will not provide a basis for removal." *Id.* (citations omitted).

It is undisputed that, Plaintiff has not raised, on the face of his complaint, a federal question. Plaintiff's claims are based solely on state law. *See, e.g.*, *Kadinger v. Wayne Chemical, Inc.*, 56 F.3d 64 (6th Cir. 1995) (breach of contract is a state law claim). Accordingly, Plaintiff's complaint does not facially raise an issue of federal law that would confer subject matter jurisdiction on the Court.

### B. Exceptions to the Well-Pleaded Complaint Rule

There are, however, limited exceptions to the "well-pleaded complaint" rule. One exception is the artful-pleading doctrine, which states that a plaintiff may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2 (1981) (quotation marks, citations, and edits omitted). A related exception is the complete-preemption doctrine, which states that removal is proper "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). A third exception is the substantial-federal-question doctrine, which

applies "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983). Under these limited circumstances, a defendant may force a plaintiff into federal court despite the plaintiff's desire to proceed in state court.

Defendants argue that the Court has federal jurisdiction under the third exception - the "substantial federal question" doctrine. (Court Doc. 22 at 6-7.) Under this exception, a federal court can have jurisdiction over seemingly state law claims if "a state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal. Such jurisdiction remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc).

The "substantial federal question" doctrine has three components: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb the congressionally approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568. The Court will analyze the facts of the case at bar against each of these three components.

1. *Claims necessarily raise a disputed federal issue*

Defendant argues that Plaintiff's claims necessarily raise a disputed federal issue because the Court will be required to determine "whether a proper 'professional review action' was conducted by Defendant Erlanger pursuant to the HCQIA."[2] (Court Doc. 22 at 12.)

The HCQIA is a federal statutory scheme that was enacted in 1986 to address the rising problem of medical malpractice and the ability of incompetent doctors to move between states without having their prior practice records follow them. 42 U.S.C. § 11101. It created a national registry which requires various entities to report on doctor's medical malpractice insurance coverage, investigations conducted by Boards of Medical Examiners, and disciplinary actions taken by peer review committees. *Id.* at §§ 11131-11134. It also sets standards for what constitutes an appropriate peer review action and creates a presumptive immunity from monetary damages awarded against participants in the peer review process. *Id.* at § 11111.

It is undisputed that the HCQIA will be involved in the ultimate determination of this action. Defendant has raised the immunity provisions of the HCQIA as an affirmative defense to its liability for monetary damages. (Court Doc. 4 at 3.)

It is a long-standing principle of federal jurisdiction that the presence of a federal

---

[2] Defendant directs the Court to a similar case currently pending before this Court, *Stratienko v. Chattanooga-Hamilton County Hospital Authority, et al.*, in which the Court refused to remand the case. *Stratienko* is distinguishable, however, because in that case, it was undisputed that the court had original jurisdiction over a number of plaintiff's claims. The issue there was whether the court should exercise its supplemental jurisdiction over plaintiff's state law claims once the federal claims were dismissed. Here, the Court is determining whether it has original jurisdiction over the case, which is an entirely separate inquiry. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) (court must first determine whether it has original jurisdiction over one of the claims in plaintiff's complaint before then determining whether to invoke supplemental jurisdiction).

question in a defense does not confer subject matter jurisdiction on a federal court. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.") In fact, "a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. V. Construction Laborers Vacation Trust*, 463 U.S. 1, 14 (1983). Moreover, a federal question is not necessarily raised by a case "when the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question." *Long v. Bando Mfg. of America*, 201 F.3d 754, 760 (6th Cir. 2000).

Under these principles, whether the Court has jurisdiction over this case depends on whether the HCQIA is necessary to prove an element of Plaintiff's case or whether it arises only in relation to Defendant's affirmative defense. If the HCQIA arises only in the context of Defendant's affirmative defense, the Court is without subject matter jurisdiction. If Plaintiff must invoke the HCQIA in order to establish an element of one of his causes of action, the Court may have jurisdiction.

Plaintiff has brought a claim for breach of contract. (Complaint ¶ 11.) To prove breach of contract, Plaintiff will be required to establish: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 677 (Tenn. Ct. App. 2007).

The HCQIA would likely arise, if at all, through Plaintiff's efforts to show that

Defendant breached the contract. Plaintiff's complaint states that his suspension occurred after a "hurried audit of several of plaintiff's patient's charts." (Complaint ¶ 6.) Plaintiff also states that "the allegations contained in Dr. Kennedy's letter [notifying him that his privileges were suspended] are pretextual, in that Erlanger is displeased that Dr. MacManus has not referred all of his patients to Erlanger for various treatments which cannot be addressed adequately at Erlanger-Bledsoe." (*Id.*)

The Medical Staff Bylaws are incorporated by reference into Plaintiff's employment contract.[3] (Court Doc. 16-2 at 3.) Section Four of the Bylaws sets forth the appropriate procedure for instituting and implementing "corrective actions," including suspensions of doctor's privileges. (Court Doc. 16-3.) The Bylaws do not reference or purport to incorporate the HCQIA or any other federal law.

If Plaintiff can establish that Defendant conducted a "hurried audit" that did not comply with the Bylaws, he could arguably establish that Defendant had breached his employment contract. Because the Bylaws set forth their own administrative procedure for handling the suspension of a doctor's privileges, it appears that Plaintiff can establish all of the elements of his breach of contract claim without reference to the HCQIA.

Defendant alleges that a federal issue is necessarily raised by Plaintiff's complaint because "Plaintiff's causes of action cannot be resolved without determining the appropriateness of the professional review action taken by Defendant Erlanger resulting in the suspension of Plaintiff's privileges." (Court Doc. 22 at 5.) The Court recognizes that

---

[3] Plaintiff claims that he is not subject to the Erlanger Staff Bylaws because no one at Erlanger-Bledsoe ever voted for, approved or otherwise endorsed the Bylaws. (Complaint ¶ 7.) However, this appears to be an alternative argument to Plaintiff's claim that Defendant's reason for the revocation of his privileges was pretexual and based on a hurried audit of patient's charts.

Plaintiff might be able to prove a breach of contract by showing that Defendant had conducted an improper peer review under the HCQIA. But a claim does not *necessarily* involve federal law when a plaintiff can establish all of the elements of his cause of action without reference to federal law. *Long v. Bando Mfg. of America*, 201 F.3d 754, 760 (6th Cir. 2000). Because Plaintiff can prove his breach of contract claim by simply showing that Defendant did not comply with the procedures outlined in the Bylaws, which would not require any analysis of, or reference to, the HCQIA, it is irrelevant that Plaintiff might also be able to establish a breach by showing that Defendant violated the HCQIA.

Plaintiff has also brought an inducement or procurement of a breach of contract claim pursuant to Tenn. Code § 46-50-109. (Complaint ¶ 12.) The elements for a claim of procurement of breach of contract are:

> (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract.

*Myers v. Pickering Firm*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). Similar to what was discussed above, none of these elements necessarily involves the application or interpretation of federal law.

Plaintiff has further brought claims for tortious interference with his contractual relationship and interference his prospective business advantages. (Complaint ¶ 13 & 14.) The elements for a claim of tortious interference with a business relationship are: "(1) the existence of a business relationship or expectancy (not necessarily contractual); (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of

interference; (4) proof that the interference caused the harm sustained; and (5) damage to the plaintiff." *See Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 699 (Tenn. 2002). The elements for interference with a business relationship are:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means . . . and finally, (5) damages resulting from the tortious interference.

*Id.* at 701. As with the claims above, for Plaintiff to prove the elements of both of these causes of action, he need not refer to, or rely on, federal law.

Defendant claims that "[t]he Court cannot decide Plaintiff's causes of action without deciding Defendant Erlanger's compliance with the HCQIA." (Court Doc. 22 at 8.) But the Court has set forth the necessary elements of each of Plaintiff's claims and none requires Plaintiff to show that Erlanger did not comply with the HCQIA to prevail on his claims.

Defendant also argues that the HCQIA's presumption against damages must be rebutted by Plaintiff as a necessary element of his claims. (*Id.* at 9.) However, with regard to damages, all that Tennessee law requires is Plaintiff to show that he suffered damages as a result of Defendant's conduct.

Defendant further argues that "Plaintiff has the burden of proving that Defendant Erlanger has not met the HCQIA's standards before he can recover any damages pursuant to his causes of action set forth in his Complaint." (Court Doc. 22 at 5.) It is true that, to recover monetary damages from Defendant, Plaintiff will have to overcome the rebuttable presumption that the peer review was conducted in accordance with the HCQIA. 42

U.S.C. § 1112(a). Whether Plaintiff suffered damages, however, is an issue separate and apart from whether he is entitled to recover damages. To prevail on his claims, as discussed above, he must establish that he suffered damages as a result of Defendant's conduct. His ability to recover monetary damages depends on whether he can rebut the presumption raised by Defendant's affirmative defense.

If Plaintiff proves all of the elements of his claims but does not overcome HCQIA's immunity provisions, he may still be entitled to non-monetary relief. *See Manion v. Evans*, 986 F.2d 1036, 1042 (6th Cir. 1993) (holding that the plain language of the HCQIA provides immunity only from damages, not from suit). The HCQIA provides that, if a professional review action meets the Act's standards, the peer review participants "shall not be liable *in damages*." 42 U.S.C. § 11111(a)(1) (emphasis added). It does not preclude injunctive or declaratory relief. *Manion*, 986 F.2d at 1041. If Plaintiff can establish all of the elements of his claims, he may be entitled to injunctive or declaratory relief, regardless of whether he defeats Defendant's HCQIA affirmative defense.

Defendant's argument on this point appears to conflate Plaintiff's *prima facie* case with Plaintiff's obligation to rebut Defendant's affirmative defense. What Plaintiff may be required to prove in order to recover monetary damages from Defendant is not part of his *prima facie* case, but arises only as a response to Defendant's assertion of the HCQIA's immunity provisions as an affirmative defense. Because Plaintiff is required to show only that he suffered damages as a result of Defendant's actions, which he can do without reference to the HCQIA, he can establish all of the elements of his claim under state law. In evaulating whether the Court has jurisdiction, it must consider only what Plaintiff is

-11-

required to prove to prevail on his claim, and must ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Defendant argues that whether a proper peer review was conducted is the central issue in this case. (Court Doc. 22 at 5.) While that contention might be true, it is not enough to confer federal jurisdiction. Quite simply, a federal court does not have jurisdiction over a case when federal law is evoked by a defense, "even if the defense is anticipated in plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

Federal courts addressing similar cases have found that there is no federal jurisdiction and have, therefore, remanded to state court. *See, e.g.*, *Matthews v. Lancaster General Hospital*, 883 F. Supp. 1016 (E.D. Pa. 1995) (after granting summary judgment on plaintiff's federal antitrust claim, the court remanded plaintiff's remaining breach of contract, interference with contractual relations and civil conspiracy claims); *Zamaniam v. Christain Health Ministry*, 1994 WL 396179 (E.D. La. July 22, 1994) (remanding plaintiff's claims, including breach of contract and tortious interference with contractual relations, for lack of a federal question). In *Shah v. Oalmetto Health Alliance*, 2006 WL 3230755 (D.S.C. 2006), the plaintiff, a doctor who had been subject to disciplinary proceedings by his employer, brought six state-law claims, including breach of contract and tortious interference with contract. Plaintiff's complaint alluded to the HCQIA in an attempt to rebut the statute's presumptive immunity for the defendants. *Id.* at *2. Plaintiff did not, however, purport to assert a claim based on the HCQIA. The court held that the complaint did not involve a federal claim and that the HCQIA would be relevant only as a potential defense.

*Id.* at *3. The Court remanded the case to state court because there were "no federal claims pled or implied in the Amended complaint." *Id.* at *4.

In sum, the Court concludes that Plaintiff can prove all of the elements of his claims without necessarily invoking federal law. Accordingly, this case fails the first part of the substantial-federal-question doctrine – that the state-law claim necessarily raises a disputed federal issue. *Mikulski*, 501 F.3d at 568.

### 2. *Substantial Federal Question*

Even if the Court were convinced that Plaintiff's claims necessarily raised a federal issue, it would have jurisdiction over this case only if that federal question is "substantial." To have jurisdiction pursuant to § 1331 under the substantial federal question exception to the well-pleaded complaint rule, the case must involve "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. "A 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.'" *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 552 (6th Cir. 2006) (quoting *Grable*, 545 U.S. at 315)).

It is undisputed that the HCQIA does not provide a federal cause of action. Defendant argues, correctly, that the lack of a federal cause of action does not bar the exercise of federal jurisdiction. *See Grable*, 545 U.S. at 317 (federal cause of action not a necessary requirement for invoking federal jurisdiction). The Sixth Circuit has stated that the absence of a federal cause of action, while not dispositive of this issue, provides a starting point for the analysis. "Congress' withholding a private right of action . . . is an

important signal to its view of the substantiality of the federal question involved." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 552 (6th Cir. 2006). "*Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law solely because the violation of a federal statute is said to create a rebuttable presumption of negligence under state law. In this situation, no welcome mat meant keep out." *Grable*, 545 U.S. at 319. In this case, HCQIA's absence of a federal cause of action is a strong indicator that Congress did not intend for the federal courts to have jurisdiction.

Defendant argues that "the meaning and application fo the HCQIA is an important issue of federal law that sensibly belongs in federal court." (Court Doc. 22 at 11.) In adopting the HCQIA, Congress recognized that federal action was necessary to address the increasing occurrence of medical malpractice, the need to improve medical care, and to restrict the ability of incompetent physicians to move between states without disclosing their disciplinary actions. 42 U.S.C. § 11101(1)-(2). Congress observed that these problems could be remedied through "effective professional peer review" and noted that the threat of monetary damages against peer review participants was hampering the peer review process. *Id.* at 11101(3)-(4). Overall, Congress found an "overriding national need to provide incentive and protection for physicians engaging in effective peer review." *Id.* at 11101(5).

While this expression of legislative intent shows that Congress felt there was a substantial problem that needed to be addressed by federal action, it is also notable to consider what Congress did not include in the statute. Congress did not legislate a requirement that the peer review process be litigated in federal court. If anything, allowing

cases to be litigated in federal court purely because they might raise an issue under the HCQIA seems to be contrary to the purpose of the statute. The HCQIA creates a presumptive immunity for participants in the peer review process, 42 U.S.C. § 11111, which would seem likely to diminish, or at least to discourage, litigation arising in this context. "The intent of the HCQIA was not to disturb, but to reinforce, the preexisting reluctance of courts to substitute their judgment on the merits for that of health care professionals." *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318, 1337 (11th Cir. 1994).

While Congress recognized that the need to improve medical care was a nationwide problem greater than that which any state legislature could tackle alone, it did not indicate that the federal courts would be better equipped to handle cases involving the HCQIA than state courts. A problem that requires federal legislative intervention does not necessarily require the intervention of the federal courts. For obvious reasons, the federal government is in a better position than the individual states to set up a national database for reporting and tracking incompetent physicians. It is not a necessary corollary, however, that federal courts must be involved in overseeing that process. As Justice Brennan wrote in his concurrence in *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 68 (1987), "the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." There is no clear expression of congressional intent to create removal jurisdiction in the HCQIA. *Wayne v. Genesis Medical Ctr.*, 140 F.3d 1145, 1148 (8th Cir. 1998). The lack of such clear intent to provide a federal forum is indicative of Congress's views on the issue.

In *Grable*, the Supreme Court noted that the United States government "has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers . . . may find it valuable to come before judges used to federal tax matters." 545 U.S. at 315. The federal government does not have such a direct interest in this case. This case does not involve the collection of federal taxes or any other expressly federal function. There is an obvious distinction between the federal government's substantial interest in collecting taxes, which fund the operation of the federal government, and the lack of a substantial interest in overseeing the physician peer review process. The Court is not convinced that litigants, in cases involving doctor's privileges and the peer review process, would find it more valuable to have their case presided over by a federal judge than a state court judge. If anything, state court judges are likely more familiar with the medical administrative procedures and general medical legal issues, the state courts being home to the vast majority of medical malpractice and other similar actions. *See Daniel v. Power*, 2005 WL 1958376 (S.D. Ill. 2005) (medical malpractice is "a creature of state law").

The Supreme Court has indicated that constitutional questions are more likely to reach the level of substantiality necessary to invoke federal jurisdiction. *Merrell Dow*, 478 U.S. at 814 n.12. The federal law at issue in this case is a statute designed to encourage peer review by immunizing its participants from monetary damages. *See* 42 U.S.C. § 11101. It does not involve federal constitutional matters or concerns. Plaintiff's claims are contractual and do not raise any constitutional considerations.

Accordingly, for all of the reasons discussed above, the Court finds that the federal question invoked in this case, if any, is not sufficiently "substantial" to confer federal jurisdiction.

### 3. *Balance of federal and state judicial responsibilities*

Finally, a federal court should not assert jurisdiction over a case if doing so would impermissibly disrupt the congressionally approved balance of federal and state judicial responsibilities. *See Grable,* 545 U.S. at 315. The Court must "inquire into the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation." *Id.* This inquiry is necessarily speculative. *Id.*

While the Court doubts that allowing any doctor whose privileges have been revoked to bring a case in federal court would cause a "flood of litigation" or "overwhelm the federal courts," the number of such cases is not insignificant. The fact that Congress did not create a federal cause of action under the HCQIA is relevant here. The Supreme Court has stated that "even if the actual number of cases prove not to be overwhelming, or even uncomfortably burdensome, it appears unlikely that Congress – through its silence – intended to open the federal court door quite so wide" as to allow federal jurisdiction when no federal cause of action has been established. *Id.*

From a policy perspective, the Court is mindful that state courts are generally presumed to be competent to interpret and apply federal law. *See Zwickler v. Koota,* 389 U.S. 241, 245, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) ("During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws."). Plaintiff's claims are traditional state-law actions and the Court has no doubt that Tennessee state courts are fully competent to interpret the provisions of the HCQIA that may arise during the resolution of this action.

Overall, a review of the case law on the "substantial federal question" doctrine

shows that there are far more examples of when and why *not to* allow removal on this basis than there are showing when and why *to* allow removal. *See Little v. Perdue Pharma, L.P.*, 227 F. Supp. 2d 838, 857 (S.D. Ohio 2002) (comprehensively reviewing Supreme Court case law on the substantial federal question doctrine). The Sixth Circuit has expressly stated that federal jurisdiction under the "substantial federal question" doctrine "remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc). Combining the general presumption that a cause of action lies outside of the federal courts jurisdiction, *see Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003), with the fact that federal jurisdiction should be invoked via the "substantial federal question" doctrine only under "exceptional" circumstances, the Court concludes that remand is warranted.

## III.  CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand [Court Doc. 20] is **GRANTED** and this case is remanded to the Chancery Court of Bledsoe County, Tennessee.

A separate Order will enter.

SO ORDERED this 19th day of May, 2008.

                                                           */s/Harry S. Mattice, Jr.*
                                                           HARRY S. MATTICE, JR.
                                                    UNITED STATES DISTRICT JUDGE